**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

PINCHAS RAUL,

Plaintiff,

v.

COVANTA HOLDING CORPORATION, SAMUEL ZELL, DAVID M. BARSE, RONALD J. BROGLIO, PETER C. B. BYNOE, LINDA J. FISHER, JOSEPH HOLSTEN, OWEN MICHAELSON, DANIELLE PLETKA, MICHAEL W. RANGER, ROBERT S. SILBERMAN, AND JEAN SMITH,

Defendants.

Civil Action No.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Pinchas Raul ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Covanta Holding Corporation ("Covanta" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and

postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Covanta and the Defendants.

**SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Covanta and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transaction (the "Proposed Transaction") between the Company and EQT Infrastructure ("EQT")

2. On July 14, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Covert Intermediate, Inc. ("Parent"), an indirect wholly owned subsidiary of funds affiliated with EQT. Pursuant to the terms of the Merger Agreement, Covert Mergeco, Inc. ("Merger Sub"), a wholly owned subsidiary of Parent, will merge with and into Covanta with Covanta surviving the merger as a wholly owned subsidiary of Parent. As a consequence of the Proposed Transaction, each Covanta shareholder will have the right to receive $20.25 in cash for each share they own (the "Merger Consideration").

3. On August 19, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Covanta and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Covanta

shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, the owner of Covanta shares.

9. Defendant Covanta is incorporated under the laws of Delaware and has its principal executive offices located at 445 South Street, Morristown, New Jersey 07960. The Company's common stock trades on the New York Stock Exchange under the symbol "CVA."

10. Defendant Samuel Zell ("Zell") is and has been the Chairman of the Board of Covanta at all times during the relevant time period.

11. Defendant David M. Barse ("Barse") is and has been a Covanta director at all times during the relevant time period.

12. Defendant Ronald J. Broglio ("Broglio") is and has been a Covanta director at all times during the relevant time period.

13. Defendant Peter C. B. Bynoe ("Bynoe") is and has a Covanta director at all times during the relevant time period.

14. Defendant Linda J. Fisher ("Fisher") is and has been a Covanta director at all times during the relevant time period.

15. Defendant Joseph Holsten ("Holsten") is and has been a Covanta director at all times during the relevant time period.

16. Defendant Owen Michaelson ("Michaelson") is and has been a Covanta director at all times during the relevant time period.

17. Defendant Danielle Pletka ("Pletka") is and has been a Covanta director at all times during the relevant time period.

18. Defendant Michael W. Ranger ("Ranger") is and has been the President, Chief Executive Officer ("CEO") and a director of Covanta at all times during the relevant time period.

19. Defendant Robert S. Silberman ("Silberman") is and has been a Covanta director at all times during the relevant time period.

20. Defendant Jean Smith ("Smith") is and has been a Covanta director at all times during the relevant time period.

21. Defendants Zell, Barse, Broglio, Bynoe, Fisher, Holsten, Michaelson, Pletka, Ranger, Silberman, and Smith are collectively referred to herein as the "Individual Defendants."

22. The Individual Defendants, along with Defendant Covanta, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23. Covanta, through its subsidiaries, provides waste and energy services to municipal entities primarily in the United States and internationally. It owns and operates infrastructure for the conversion of waste to energy (WtE), as well as engages in related waste transport and disposal, and other renewable energy generation businesses. The company disposes waste and generates electricity and/or steam; sells ferrous and non-ferrous metal recovered during the WtE process; and offers waste management solutions, such as site clean-up, wastewater treatment, pharmaceutical and healthcare solutions, reverse distribution, transportation and logistics, recycling, and depackaging. As of December 31, 2020, it owned and operated 41 WtE operations, 13 transfer stations, 20 material processing facilities, 4 landfills, 2 wood waste energy projects, 1 regional metals recycling facility, and 1 ash processing facility. The company was formerly known as Danielson Holding Corporation and changed its name to Covanta Holding Corporation in September 2005. Covanta Holding Corporation was founded in 1986 and is headquartered in Morristown, New Jersey.

### The Company Announces the Proposed Transaction

24. On July 14, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> MORRISTOWN, N.J., July 14, 2021 /PRNewswire/ -- Covanta Holding Corporation (NYSE: CVA), a world leader in sustainable waste and energy solutions, today announced that it has entered into a definitive agreement with EQT Infrastructure ("EQT"), whereby EQT will acquire all shares of Covanta common stock for $20.25 per share. The purchase price represents an approximately 37% premium to Covanta's

unaffected share price of $14.78 on June 8th, the day prior to initial media speculation of a transaction. The acquisition is subject to Covanta shareholder approval, as well as customary government approvals, and is expected to close in the fourth quarter of this year. The agreement resulted from a competitive sale process and is not subject to a financing condition.

"We are pleased to announce this agreement with EQT," said Michael Ranger, Covanta President and CEO. "Our comprehensive analysis during the past nine months has been singularly focused on enhancing value for our shareholders. EQT certainly recognizes the value we see in our business, and this transaction represents an excellent outcome of our strategic review. Furthermore, as an organization dedicated to sustainability and environmental stewardship, EQT shares our vision for a safer, cleaner and more prosperous future through sustainable waste management thereby ensuring no waste is ever wasted. We couldn't ask for a better partner as we embark on this next phase of our company's evolution, delivering on our goal of building a sustainable future for all stakeholders."

Covanta is the world's leading waste-to-energy provider, operating facilities in North America, Europe and the UK. Annually, Covanta's 40 plus facilities process approximately 21 million tons of waste from municipalities and businesses and convert it into renewable electricity to power over one million homes.

Following the completion of the acquisition, EQT will work with Covanta's management team to build upon its impressive strengths including its portfolio of assets that provide essential waste services to municipalities and commercial customers, its long-term community relationships, as well as its numerous growth opportunities, including through a robust UK project pipeline of new waste-to-energy infrastructure and Covanta's Environmental Solutions platform. Covanta will maintain its corporate headquarters in Morristown, New Jersey and its management team is expected to remain in place.

Alex Darden, Partner within EQT Infrastructure's Advisory Team, said, "EQT and Covanta are proven business leaders who share a like-minded approach to environmental stewardship, and this acquisition aligns directly with EQT's thematic approach of investing in sustainable businesses that have a positive impact on society. EQT is excited to partner with the entire Covanta team and to invest in organizational, operational, and digital technology initiatives that will enhance Covanta's ability to provide sustainable solutions to growing waste challenges. As a responsible investor, EQT is committed to working with Covanta on transforming and supporting the energy transition and circular economy across its local communities."

Sam Zell, Covanta's Chairman of the Board, commented, "This agreement represents the successful completion of many months of work by members of Covanta's senior leadership team as they executed the in-depth review of the company's operations, growth priorities and capital structure announced in October of last year. This fulsome effort culminated in a competitive process that we believe provides the best risk-adjusted value for shareholders."

BofA Securities acted as financial advisor to Covanta and Debevoise & Plimpton LLP provided legal counsel.

**FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

25. On August 19, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

26. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process**

27. The Proxy Statement contains information concerning the background of the Proposed Transaction, but fails to disclose material information concerning such.

28. First, the Proxy Statement fails to disclose sufficient information concerning the nature of all confidentiality agreements entered into between Covanta and any interested third party during the sales process, as well as whether any agreement contained "don't-ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

29. The Proxy Statement fails to adequately disclose communications regarding post-transaction employment during the negotiation of the Proposed Transaction which must be disclosed to stockholders.

30. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Company's Financial Projections**

31. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

32. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

33. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

34. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Free Cash Flow, (iii) North American Unlevered Free Cash Flows; and (iv) European Levered Free Cash Flows.

35. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Opinions**

36. The Proxy Statement contains the financial analyses and opinion of BofA Securities, Inc. ("BofA") concerning the Proposed Transaction, but fails to provide material information concerning such.

37. With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each company observed in the analysis.

38. With respect to BofA's *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for each company observed in the analysis; (ii) the Company's net debt as of June 30, 2021; and (iii) the number of fully-diluted shares of Company common stock as of April 23, 2021.

39. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the company's terminal values; (ii) the basis underlying BofA's use of the the perpetuity growth rates of 1.5% to 2.5%; (iii) the basis underlying the BofA's use of the discount

rates ranging from 6.25% to 7.25%; (iv) the weighted average cost of capital for the Company; and (v) the line items used to determine the levered and unlevered free cash flows for Covanta.

40. With respect to BofA's *Wall Street Analysts Price Targets* analysis, the Proxy Statement fails to disclose: (i) the equity research analysts reviewed; and (ii) the equity research analyst price targets for the shares of Covanta common stock available as of July 9, 2021.

41. With respect to BofA's *Leveraged Buyout Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying BofA's use of an LTM terminal EBITDA multiple range of 8.0x to 10.0x; and (ii) the inputs and assumptions underlying BofA's use of a target range of annualized internal rates of return for the financial sponsor of 14.0% to 16.0%.

42. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

43. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

45. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or

omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

49. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

50. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

52. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Covanta within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Covanta, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

58. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 27, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*